George Francis **VERTZ**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 13–84–034–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 14, 1985.

Donald Dailey, Jr., Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for burglary of a habitation. The jury assessed punishment at ninety-nine years in the Texas Department of Corrections.

Appellant asserts in his first ground of error that the trial court erred in overruling his motion for new trial because the evidence was insufficient to corroborate the testimony of the accomplice witness as required by TEX. CODE CRIM.PROC. ANN. art. 38.14 (Vernon 1979).

A detailed recitation of the facts is necessary. Carmine Stanzione, the accomplice witness, testified at trial that he and the appellant burglarized the home of the complainants in September 1982. According to Stanzione, he and appellant came to Corpus Christi in September 1982 with the express intention of burglarizing homes. The two, as testified to by Stanzione, purchased an inflatable raft to be used as their mode of transportation in carrying out a burglary of a bayfront home. On their first trip to Corpus Christi, they launched the raft in Corpus Christi Bay, but it almost capsized in the rough bay waters. Stanzione said that they left the Corpus Christi area after this attempt and returned to Houston. There, they purchased another, more suit-

able raft and returned to the Holiday Lodge in Rockport, where they had stayed previously. Stanzione testified that, on the evening of September 19, 1982, he and appellant launched the raft, propelled by a motor, into the bay in search of a house to burglarize. Stanzione testified that, after motoring a few miles, they chose complainant's house because there was an accessible sand beach nearby and they later could see complainants in their bedroom through sheer curtains. He suggested that it was wiser to choose a home in which the residents were at home in a confined area, rather than getting shot in a darkened house.

It was Stanzione's testimony that they put the raft onto the sand and watched the home for a couple of hours. At one point during their surveillance, complainants' dog began to growl. One of the complainants got up and checked around the house and returned to the bedroom. Stanzione testified that he then shot out an outdoor light with a BB gun. He also shot holes through a back window with a BB gun, and they later entered through that window. Stanzione said that using a BB gun would prevent the window glass from shattering and would prevent the alarm system from being set off. He had seen a red light earlier which indicated to him that the house had an activated burglar alarm system. The two men entered the home. Stanzione testified that he began loading pillowcases with silverware while appellant kept watch at the complainants' bedroom door, armed with a .22 automatic. The two then decided to enter the bedroom to search for jewelry. There was a deadbolt on the door, so Stanzione broke down the door. He testified that, upon entering the room, appellant tied up the complainants. According to Stanzione, appellant took two rings and a watch from one of the complainants when he tied her up. One of the complainants aided Stanzione in opening a safe containing diamond and gold jewelry which was located in a closet area in the bedroom. The total value of the property taken in the burglary was approximately $1,200,000.00. According to Stanzione, he

and appellant arrived back in Rockport at about 2:00–2:30 a.m. Stanzione testified that appellant left Rockport at about 4:00 a.m. for a court hearing in Liberty, Texas, which was supposed to take place the following morning. Appellant returned to Rockport the following evening, and the next day they went back to Houston, where they sold the property.

One of the complainants identified Stanzione's voice. She testified essentially to the same series of events as Stanzione. She indicated that both burglars wore ski masks. The other burglar was taller and thinner than Stanzione. Her version of the facts was similar to Stanzione's, with the exception that she more graphically explained the threats which were made against her and her husband by the two intruders.

Shirley Kroupa, owner of the Holiday Lodge in Rockport, testified that a man named Duke, who she identified as appellant, and his brother, Tony, who she identified as Stanzione, registered on two separate occasions at the motel. Appellant registered at the motel as "John Duke." She remembered having a conversation with appellant about a rubber raft which he claimed got a hole in it, and he and his "brother" had almost drowned. She also remembered that, on their second visit, appellant had asked her where he could get BB's for his BB gun. Appellant had been staying in Room 9, and Stanzione and his wife stayed in Room 11. In Room 9, Kroupa discovered a hole in the ceiling after appellant left which hadn't been there previously. She found a box on the dresser with a picture of a BB gun on it. Sergeant Gary testified that he collected evidence at the Holiday Lodge and found a BB which had been lodged in the bathroom door of Room 9. Kroupa further testified that Stanzione and appellant first stayed at the motel from September 13 through September 14. The second time, they stayed from September 17 until September 21. This corresponded with Stanzione's testimony that they had come to the area, left, and returned after purchasing another raft in

Houston. Kroupa testified that, on the morning of September 20, she checked the parking lot for cars and noticed that appellant's car was gone by 9:00 a.m. She also testified that she recalled seeing appellant on the evening of September 20 between 8:00 and 9:00 p.m. During the day, Stanzione's wife had paid for another night at the motel.

The appellant testified that he stayed at the Holiday Lodge with the Stanziones. According to appellant, they were on vacation together. He acknowledged that he knew Stanzione was a burglar and was looking for places to burglarize. He testified that, on September 19, 1982, he drove the car they were renting to Liberty, Texas, for a court hearing. He claimed that he left Rockport at 7:30 p.m. that evening, hours before the burglary. He denied participation in the burglary.

■ The standard of review for sufficiency of corroborating evidence is that the testimony of an accomplice will not support a conviction unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1966). In reviewing the evidence, we eliminate from consideration that evidence of the accomplice witness to ascertain if there is inculpatory evidence which tends to connect the defendant with the commission of the offense. If there is other evidence of an incriminating nature, the corroboration is sufficient; otherwise, it is not. *James v. State*, 538 S.W.2d 414 (Tex. Crim.App.1976). The corroborative evidence need not directly link the accused to the crime or be sufficient alone to establish guilt; it need only make the accomplice testimony more likely to be true than not. *Warren v. State*, 514 S.W.2d 458 (Tex. Crim.App.1974). Presence of the accused in the company of the accomplice shortly before or after the time of the offense is not sufficient corroboration. However, on the other hand, the presence of the accused, when coupled with other circumstances, may be sufficient to corroborate the testimony of the accomplice. *Ayala v.*

*State*, 511 S.W.2d 284 (Tex.Crim.App.1974). The corroborative evidence is sufficient if the cumulative weight of such evidence tends to connect the accused with the crime. *Ayala* at 287. All facts and circumstances in evidence may be looked to as furnishing the necessary corroboration. *Mitchell v. State*, 650 S.W.2d 801 (Tex. Crim.App.1983). Sometimes insignificant circumstances afford the most satisfactory evidence of guilt and corroboration of the accomplice witness' testimony. *Mitchell* at 807.

■ Here, we find that the corroborating evidence sufficiently showed that appellant was in the company of Stanzione shortly before the crime was committed and also in the evening after the crime took place. This was at a location which, although it was not near the crime, certainly was not so far away as to make his involvement in the crime impossible. There was testimony that the appellant had inquired of Mrs. Kroupa where he could obtain BB's for his BB gun. This conversation took place at a time within a few days of the commission of the burglary. There was evidence that BB's were used at the crime scene. A BB and an empty box which had once contained BB's were found in appellant's room at the Holiday Lodge. The testimony also revealed that appellant and Stanzione registered at the motel under false names. The testimony of Mrs. Kroupa showed that appellant had been in a rubber raft which had nearly capsized. This corroborated Stanzione's testimony that their first attempt to use a rubber raft had failed. The complainant had been able to identify Stanzione from a voice comparison. She identified the other burglar as being taller and thinner than Stanzione, although the record contains no testimony that the appellant was, in fact, taller and thinner than Stanzione. Both men were before the jury, who had an opportunity to view their physical appearances. We find that the corroborating evidence was sufficient to link appellant to the burglary. The state met its burden to show that there was other evidence of an incriminating nature which

tended to make the accomplice's testimony certainly more likely than not. Appellant's first ground of error is overruled.

In appellant's second and third grounds of error, he argues that his conviction is void because he did not receive effective assistance of counsel in violation of his constitutional rights under Art. 1, § 10 of the Texas Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Appellant claims that, at the guilt stage, defense counsel allowed very damaging hearsay evidence to be admitted and failed to call alibi witnesses. At the punishment phase, he asserts that counsel failed to voir dire the state's reputation witnesses and allowed the prosecutor to make extremely prejudicial arguments which were outside the record.

 The right to effective assistance of counsel insures the right to reasonably effective assistance. *Ingham v. State,* 679 S.W.2d 503 (Tex.Crim.App.1984); *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App. 1980). A court, in deciding an effectiveness claim, must judge the reasonableness of counsel's conduct based upon the facts of the particular case viewed as of the time of counsel's conduct. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 S.Ct. 674 (1984). In *Strickland,* the U.S. Supreme Court set out the test to be used in determining whether counsel was ineffective in his representation at trial.

 First, the defendant is required to show counsel's representation was deficient. This may be shown by a demonstration that counsel made errors so serious that he was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.

Second, there must also be a showing that the deficient performance prejudiced the defendant.

Addressing appellant's first contention concerning hearsay testimony which was elicited during the examination of James Peters, a Texas Ranger, we find, that on direct examination by the State, Peters testified that, in October 1982, he transported ten BB's from Corpus Christi to the firearms laboratory in Austin. The BB's that he brought back were marked for identification and admitted into evidence. Appellant's counsel on cross-examination elicited testimony from Peters that he was told that the BB's were Daisy Brand BB's. He testified that the laboratory made a report on the brand of BB. He then testified that the photo lab photographed various BB's to show the comparison among various types of BB's. On redirect, the state offered a photograph which portrays the BB's that he took to the lab in Austin as well as five different varieties of BB's. This evidence was received without objection. On recross, appellant's counsel elicited an opinion from Peters that the BB's analyzed in Austin looked closest to the Daisy Rockport BB's. The lab report indicated that it was their opinion that the BB's found at the crime scene were consistent with the BB's from the motel room in terms of being the same approximate weight, diameter and appearance.

 The evidence appellant complains of was introduced in hearsay form and was unobjected to by appellant's counsel. In fact, appellant's counsel elicited some of the hearsay testimony. It appears from the record that the State was planning to introduce this evidence through another witness. In his opening statement, counsel, for the State told the jury that he was planning to call an intelligence officer, Ron Richardson, with the Department of Public Safety who would testify that the BB's recovered from the crime scene and those recovered from the motel room were similar as to weight, size and color. The statement made by the prosecutor was not evidence. The State did not, in fact, call Richardson of the Department of Public Safety. In all likelihood, the testimony elicited through Peters precluded the necessity of calling Richardson as a witness. We agree with counsel for appellant that the testimony elicited was hearsay. We also agree that it should have been objected to. However, ineffective assistance is generally not established by separating out

one portion of trial counsel's representation for examination. *Bolden v. State,* 634 S.W.2d 710, 714 (Tex.Crim.App.1982). Our determination of the adequacy of counsel's representation must be based upon the totality of representation. *Ferguson v. State,* 639 S.W.2d 307 (Tex.Crim.App.1982). The admission of this evidence through a hearsay witness, by itself, did not constitute ineffective assistance of counsel.

■ Appellant next asserts that his counsel did not provide him with effective assistance of counsel because he did not call as a witness Frank Hughes, appellant's Houston attorney, or subpoena his Liberty County court records. Appellant claims that he met with Hughes on the day following the burglary. Appellant testified that he left Rockport on September 19, 1982, at 7:30 p.m. The burglary took place in the late evening hours of the 19th. Appellant's motion for new trial shows that he appeared in the 253rd District Court in Liberty on September 20, 1982. The motion also contains the affidavit of Frank Hughes that he spoke with the appellant on September 20 between 8:30 a.m. and 9:00 a.m. There is no evidence in the record that the testimony of Hughes would corroborate appellant's testimony that he left Rockport for Liberty on September 19 at 7:30 p.m. There was testimony that Liberty, Texas, is located approximately 300 miles from Corpus Christi. Stanzione testified that appellant left for Liberty at about 4:00 a.m. on September 20, 1982. Attorney Hughes' affidavit states that he spoke with appellant on September 20 between 8:30 and 9:00 a.m. Appellant does not contend, nor do we find anything in the record to suggest that the testimony of Hughes or the Liberty court records would place appellant in Liberty on the evening of September 19 or the very early morning hours of September 20, thus creating an alibi for appellant.

Appellant's trial counsel requested, in a pretrial motion, a subpoena for attorney Hughes and certain Liberty County Court records pertaining to appellant's appearance in court. The record before us does not reflect whether appellant's trial counsel ever attempted to follow through with the requested subpoena for the attorney or the records. Based upon the evidence before us in the appellate record, we do not know whether counsel made a conscious decision not to subpoena Hughes and the Liberty County records or whether he simply failed to have the subpoenas issued. Either way, this did not amount to ineffective assistance of counsel. Our duty is not to second-guess the strategy of trial counsel, but to review the totality of trial counsel's representation. From this, we determine whether appellant has been denied the right to effective assistance of counsel.

■ Appellant next contends that the failure of his counsel to take reputation witnesses on voir dire out of the jury's presence deprived him of effective assistance of counsel. At the punishment stage of trial, the State called three police officers who testified that appellant's reputation for being a peaceable and law-abiding citizen was bad. Appellant's counsel cross-examined all three officers. One officer testified that he had not had contact with appellant for over a year. Another testified that he did not know appellant personally. The third testified that he had no knowledge of appellant ever being convicted of a crime in Beaumont. We find that counsel's decision not to voir dire these officers was a decision which he could properly have made. While he certainly had a right to voir dire these witnesses, it was a tactical decision for him not to do so. There was also testimony that Stanzione's reputation in the community was bad. We do not see how his failure to voir dire the officers amounted to ineffective assistance of counsel.

■ Appellant also asserts that the failure of counsel to object to the prosecutor's argument constituted ineffective assistance. Jury argument is proper in the following areas: 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) answering argument of opposing counsel; and 4) proper pleas for law enforcement. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973). Appel-

lant objects to the following arguments made by the prosecutor:

> Now, I keep a shotgun next to my bed. I have to deal with people like this all the time and I'm scared of them. So I have got some protection.

> \* \* \* \* \* \*

> And any time I'm around a bunch of people I don't know like at a party or something like that and I tell them where I work, people get real incensed sometimes, like, by God, why don't they do something about this or why don't they do something about that, or, you know, well, I'm tired of these DWI's, I'm tired of these burglars, I'm tired of this, why don't they do something about it. I'll tell you the same thing I tell those people. Right now, when you are on a jury, you're they, you're the people that can do something about it. What I always tell those people getting after me at parties and things like that, I always say, 'I hope you'll remember that whenever you're on jury duty, because that's the only chance you're going to get to do anything about it.'

We find that both of these arguments were proper pleas for law enforcement. *See Denison v. State*, 651 S.W.2d 754 (Tex.Crim. App.1983); *Haynes v. State*, 627 S.W.2d 710 (Tex.Crim.App.1982).

▮ Appellant also objects to the following argument of the prosecutor which was made during the prosecutor's rebuttal at the punishment phase of trial:

> And he sits there and belittles those police officers who came all the way down here from Houston and Beaumont, tells you you shouldn't pay any attention to them. Well, I'll tell you why he doesn't want you to pay any attention to them because of what their testimony was. Like I told you, all I can ask them is what his reputation is.

The appellant's counsel made the following argument during his summation:

> The DA even spent the taxpayers' money to bring three detectives down here from Houston and Beaumont and what did they say? They said he's got a bad

reputation. Hell yes, anybody who's been in jail is going to be described as having a bad reputation. You spend a few months in jail and you'll be a person with a bad reputation. That wasn't any great shock or surprise, nor do I think it should have any effect.

We find that the State's argument was merely answering the argument of the appellant and was not error. We do not see how trial counsel's failure to object to a prosecutorial argument which was proper could be deemed a showing of ineffective assistance of counsel.

Viewing all of the evidence as a whole, we find that appellant's trial counsel rendered reasonably effective assistance. We note that trial counsel made pretrial motions, participated in the voir dire examination, cross-examined the State's witnesses, made objections, objected to the jury charge, requested an instructed verdict and presented final arguments at both the guilt-innocence and punishment phases of trial. We need not reach the second prong of the *Strickland* test concerning prejudice because we have determined that appellant's counsel was not so deficient as to be deemed ineffective assistance of counsel.

Appellant's second and third grounds of error are overruled. The judgment of conviction is affirmed.